| 32 | 425 |
| 142 | 375 |

## LOUIS BRUCK AND WIFE *v.* REASON P. TUCKER *et al.*

CONSTRUCTION OF WILL.—If the testator devises his "flour mill, with the land pertaining thereto, a half league, more or less," and he owns a large tract of land around the mill, and there is no inclosure around the mill, and no portion of it has any special relation to the business carried on at the mill, the entire tract of land passes by the will to the devisee, upon the death of the testator.

IDEM.—If the whole tract of land around the mill which belongs to the testator in such case is less than half a league, it will be assumed that he intended to give the whole tract.

CONFLICT OF TESTIMONY.—If the testator devises his "flour mill, with the land pertaining thereto, a half league, more or less," and several witnesses testify, some, that he applied the term "mill tract" to all the land at one time, and others, that at a different time he applied the same name to only a part of the land, it is not a case of conflict of testimony.

RECOVERY OF LAND DEVISED.—Such testimony only shows that the testator applied the name " mill tract" sometimes to a part of the land, and sometimes to all, and the devisee, to recover the land, is not obliged to prove the boundaries of the land intended to be devised.

WHAT PASSES BY WILL.—If the testator in his lifetime conveys or contracts to convey a part of a tract of land devised by him, the will, upon his death, operates only upon so much of the land as legally and equitably belonged to him at his death.

APPEAL from the District Court, Seventh Judicial District, Napa County.

This cause came on to be tried on the 3d day of October, 1865. The plaintiff, to maintain the issues joined on his part, proved a grant from the Mexican Government to Dr. Edward T. Bale, of the Rancho Carne Humana, and confirmation thereof, and that the claim was still pending upon exceptions to the survey; also, that juridical possession was given of the ranch. It was admitted that the land in controversy was covered by the grant and juridical possession. Plaintiff then put in evidence the will of Dr. Bale, the father of Mrs. Bruck.

The defendants were in possession of several portions of the tract of fourteen hundred and thirty-six acres, outside of the one hundred and ninety acres west of the Napa River. The defendants recovered judgment in the Court below, and the defendants appealed.

The other facts are stated in the opinion of the Court.

*B. S. Brooks,* for Appellants.

The question was not one of identification nor of boundaries. It was a question of *construction,* of *intention,* of *interpretation.* The question was and is, what did Dr. Bale mean by the words used by him in his will, " the flour mill and all of the land, etc., which pertains to said mill, a half league, more or less ?" This was for the Court to determine, and it is for this Court to determine. There are two ways that we may determine it. The first way is to interpret it in the light of surrounding circumstances, and if they are sufficient it will not be necessary to look any further. We find a segregated

tract upon which the flour mill stands, containing less than half a league.   It does not adjoin any other land of the testator.   Is anything more necessary to enable the Court to interpret the will ?   Is it not manifest that this is the tract of land intended to be devised ?   It is for the Court, not the jury, to construe the will, and to ascertain what land the testator intended to devise.   The construction and effect of a deed are matters of law, and if a jury undertake to find what effect a deed has, the Court will thus far disregard the finding and give the deed its proper effect. (*Muller* v. *Shackleford*, 4 Dana, 264 ; *Venable* v. *McDonald*, 4 Dana, 336 ; *Sheldon* v. *Dodge*, 4 Denio, 417 ; *Turner* v. *Gates*, 16 How. U. S. 14.) The construction of the will, where it is to be gathered from the will alone, is a mere question of law. (*Sorrel* v. *Sorrel*, 5 Ala. 245 ; *Branch Bank at Mobile* v. *Boykin*, 9 Ala. 320.)

*C. Hartson*, for Respondents.

The question of identification was one of *fact* and not of *law*, and was properly submitted to the jury. (Constitution of California, Art. VI, Sec. 17 ; Practice Act, Sec. 165 ; 1 Cal. 328 ; 4 Cal. 69 ; 8 Cal. 216.)   The parcels in a devise always lie out of it, and must be sought by evidence *aliunde*.   Their identity is a fact to be found by the jury. (*Ryers* v. *Wheeler*, 22 Wend. 150.)   Boundaries and lines are always questions of fact for the jury. (*Barclay* v. *Howell's Lessees*, 6 Pet. U. S. 510.)   There was a conflict of testimony, and this Court will not disturb the verdict. (*Peterie* v. *Bugby*, 24 Cal. 422 ; *Lubeck* v. *Bullock*, 24 Cal. 338 ; *People* v. *Brown*, 27 Cal. 500.) The point in issue was the identification of the land.   Appellants claimed a piece of land under a will, in which it was designated as " the flour mill and all the land, etc., which pertains to said mill, a half league, more or less."   The only way of identifying the land so as to enable the jury to decide whether the defendants were upon it, and to enable the officer to find the land of which the writ should direct him to give the plaintiffs possession, was by proving its metes and bounds.

. Although it is the province of the Court to construe the written instrument, yet when the meaning is to be ascertained by the light of extraneous facts in connection. with the written language, much is to be left to the jury. (*Gardner* v. *Clark*, 17 Barb. S. C. 551; *Jennings* v. *Sherwood*, 8 Conn. 127.) "An admixture of parol with written evidence draws the whole to the jury." (*Sidewell* v. *Roberts*, 1 Penn. 386; *Welsh* v. *Dusar*, 3 Binn. 377; *Dennison* v. *Wurtz*, 7 Serg. & Rawle, 372; *Moore* v. *Miller*, 4 Ib. 279; *Watson* v. *Blaine*, 12 Ib. 131; *Overton* v. *Tracy*, 14 Ib. 311; *Brown* v. *Campbell*, 1 Ib. 176; *Etting* v. *U. S. Bank*, 11 Wheat. 59; 2 Phil. on Ev., C. & H.'s notes, 4th ed., p. 734, note 510; *Frier* v. *Jackson*, 8 Johns. 507.) "The right of the Court to decide on the legal effect of written instruments cannot be controverted, but the question of boundary is always a matter of fact for the determination of the jury." (*Barclay* v. *Howell's Lessees*, 6 Pet. U. S. 508; *Reynolds* v. *West*, 1 Cal. 323; *Hicks et al.* v. *Davis*, 4 Cal. 69.)


By the Court, SHAFTER, J.:

Ejectment for land situate in the County of Napa.

Mrs. Bruck made title to the demanded premises, as devisee of her father—who held by grant from the Mexican Government.

The devise was as follows: "To my daughter Lolita [Mrs. Bruck] the flour mill with the land pertaining thereto, a half league, more or less." The will was made in 1849.

It appeared in evidence that the grant to the testator was of land situate in Napa Valley, and that the Napa River runs through the grant from north to south. That the testator, some years before his death, conveyed a piece off the northerly end of the grant to one Kilburn, and another piece, toward the southerly end, to one Kellogg—leaving a section, intermediate the two parcels, lying on both sides of the river, and extending to the eastern and western boundaries of the grant. This section contained one thousand four hundred and thirty-

six acres.   It further appeared that the flour mill, forming in
part the subject matter of the devise, was situated on this
section, and on that part of it lying to the west of the river,
which part contained one hundred and ninety acres only.   It
further appeared that there was no inclosure around the mill,
either near or remote.   It stood in the open country.   There
was no evidence tending to prove that any of the lands lying
between the mill, taken as a centre, and the exterior limits of
the unsold section described, had any special relations to the
business carried on at the mill.

First—That the mill devised was the flour mill referred to,
is not disputed.   The testator owned no other; and as there
was no evidence tending to establish any connection between
the mill and any land outside of the section named, it must be
understood that the testator, in the use of the word " per-
tains," referred to the land belonging to him lying between
the walls of the mill and the outer limits of the unsold section
on which the mill stood.   This follows of necessity.   No part
of that section bore any relation to the mill that was not
borne, both in kind and degree, by every other part of it.
The only relations which the different portions of the section
beyond the walls of the mill, bore to each other, lay in the
fact that they were parts of a common whole; and the rela-
tion so existing between them—*inter sese*—was the relation
that existed between them in mass, and that particular part of
the section on which the mill stood.   The principle is this : If
the central or any other section of an entire and homogeneous
thing be either devised or granted, together with " all " the
other sections " pertaining " thereto, the entire thing would
pass, as matter of law.   In such case the whole thing would
be granted by a virtual enumeration of its parts.

Second—But the question is presented in the record under
another aspect.   The case was tried upon the theory that the
lands " pertaining to the mill" were, according to the inten-
tion of the testator, the lands which were known to him, and
through him to others, as the " mill tract."   The evidence of
the plaintiffs tended to prove that the testator, in many

instances, both before and after the making of the will, desig-
nated the whole of the unsold section as the "mill tract," while
the defendants' testimony tended to prove that the testator, on
other and different occasions, had applied the name to that
part of the unsold section lying on the west bank of the river.
There was, obviously, no conflict in this testimony; that is,
the witnesses of the plaintiffs were not contradicted in any
respect by the witnesses of the defendants. The plaintiffs'
witnesses testified to one set of utterances, and the defendants'
witnesses to another. It was error, therefore, for the Court to
instruct the jury upon the hypothesis that the testimony was
in conflict—submitting the question to them of whether the
larger or the smaller area was intended to be devised as one of
"preponderance," turning upon the relative weight of proofs
assumed to be conflicting. The true instructions would have
been that the tendency of all the evidence was to prove that
the testator applied the name of "mill tract" to both the larger
and the smaller quantity indifferently, and that if the jury
found that such was his practice in fact, and found further that
the whole of the unsold section contained but fourteen hun-
dred and thirty-six acres, and that that part lying to the west
of the river contained but one hundred and ninety acres, then
their verdict should be for the plaintiff. The case was not one
of admitted or proved discrepancy between metes and bounds
visible in the field, and quantity considered as a call. The
question was, primarily, as to the application of a name. The
name, however it may have been a clue to boundaries, was not
a bound in itself considered. Had it been made to appear
that the testator applied the name to but one parcel of land,
then whether the parcel contained more or less than a half
league would have been a matter of indifference. But taking
it as found or given, that the testator applied the name
sometimes to the whole of the unsold section and sometimes
to a part of it, it would be impossible for either Court or jury
to determine on that state of facts alone, in which of its two
scopes the testator used the name when he came to make his
will. The problem thus raised by one of the extrinsic facts is,

however, fully solved by another when taken in connection
with that call of the will in which the land intended to be
devised is described as a " half league more or less."    It must
be assumed that the testator intended to give the whole sec-
tion ; for though its area was less than a half league, it was
nevertheless a nearer approximation to that quantity than the
smaller area to which the testator had occasionally applied
the common name.    In so holding we do not subordinate a
territorial name, the precise dimensions of which have been
ascertained, to a call for quantity, but use that call as an aid
in finding bounds as yet unknown.    In this case quantity is as
a guide-board standing where a road divides, showing to the
traveller which fork he must take to reach his place of desti-
nation.

Third—The Court told the jury that "the plaintiffs could
not recover unless they established the lines and boundaries of
the land devised with as much certainty as though they were
contained in the deed."    The charge was given upon the mis-
taken hypothesis before remarked upon, viz: that the wit-
nesses contradicted each other, and the instruction was there-
fore properly excepted to by the plaintiffs.

Judgment reversed and new trial ordered.


By the Court, SHAFTER J., on petition for rehearing :

In the opinion delivered in this action we do not hold that
any part of the mill tract passed to the devisee which the
devisor conveyed or contracted to convey in his lifetime.    The
will of course operated only upon so much of the mill tract
as legally and equitably belonged to Dr. Bale at the time of
his death.

Rehearing denied.