[Civ. No. 7515. First Appellate District, Division Two.—September 29, 1930.]

In the Matter of the Estate of ENOCH WINSBY, Deceased. EDWARD GEORGE WINSBY, Respondent, v. RACHEL M. WINSBY et al., Appellants.

Robert B. Gaylord for Appellants.

Ford & Johnson and John L. Reith for Respondent.

STURTEVANT, J.—The decedent died testate, leaving him surviving a widow and several children. In due time a petition for partial distribution was filed by one of his sons, Edward George. That petition was heard and determined and a decree was entered in favor of the petitioner. The widow and one daughter being dissatisfied have appealed from that decree.

The decedent had accumulated considerable property. He owned large interests in United Iron Works, a corporation operating at Oakland, Standard Iron Works, operating at San Diego, and he also owned and operated East Bay Auto Camp, which is located on San Pablo Avenue in Oakland. Commencing as early as 1921 the decedent commenced to construct and maintain the auto camp. He owned a tract of 5.13 acres near Forty-seventh Street and San Pablo. At that time, or shortly thereafter, he leased an irregular piece of ground on the south side of the camp. The decedent's tract was bounded on the south by two holdings. One holding was school property and the other holding was a neck of the property so leased as above mentioned. Continuing the south line of the school property in an easterly direction, the neck so referred to makes a tract 3.07 acres. As the decedent proceeded to develop the auto camp he caused to be constructed on the three-acre tract the laundry and some of the shelters for the campers.

The entire camp is laid out in the form of a small city. East Street extends from the north side of the five-acre tract to the south side of the three-acre tract. The same may be said of West Street. Commencing at a point on San Pablo Avenue, the decedent constructed a fence along the north line of the five-acre tract extending to its westerly boundary, thence along the westerly boundary to the south side of the three-acre tract, thence to the school lot and then meandering the school lot on the west and north lines until reaching San Pablo Avenue. Without going into more detail the evidence shows the East Bay Auto Camp to be one entity and to constitute a small city. The petitioner operated the camp store located at the corner adjacent to San Pablo Avenue and the school. The store building consisted of a store on the ground floor and flats above. The decedent was the owner of the building and of the store business. From time to time the decedent issued advertisements in which the property was referred to as "The East Bay Auto Camp covers eight acres of ground and has accommodations for four hundred campers". A similar expression was used for a sign at the entrance. The decedent was evidently very proud of the auto camp. The record discloses that he contemplated additional permanent improvements. The three-acre tract was a part of a larger tract comprising about thirteen acres. Ten acres of that tract were known as the "Circus Ground". About one year prior to his death the decedent bought from Mrs. Campman, who was petitioner's "Aunt Ruby" the thirteen-acre tract. He was so pleased that he went at once to the auto camp and called the petitioner to go with him out on to the grounds, saying to the petitioner, "I want you to go down on the lot. I just bought your Aunt Ruby out. So if I get kicked in the head with a mule, George, you won't have to worry about fighting with her". In laying out the auto camp, gas, water and electric mains were laid before the decedent purchased the additional grounds. The mains were laid on the five-acre tract and branches were extended to both the five acres and three acres. The decedent purchased trees and caused the trees to be set out on both tracts.

The decedent made his will March 21, 1923. He died June 26, 1925. As just stated, the second tract was purchased about a year before his death. In the fifth para-

graph of his will he stated as follows: "I give to my son Edward George Winsby, or if I survive him then to the lawful issue of his body, if any, surviving me three hundred (300) shares of the capital stock of said United Iron Works; also the two-story store building, with flats above, known as the Auto Camp Market, located on the ground of the East Bay Auto Camp, on San Pablo avenue, together with the land on which it stands including the land in the small back yards of the store and an additional strip of land three (3) feet wide and one hundred (100) feet long on the north side of the store building; also. the fixtures and stock of groceries in said building at the time of my death; also all cash in the account of said auto camp market at the time of my death, whether in bank or on hand; also an undivided one-third ($\frac{1}{3}$) interest in the land, buildings, business, equipment, and all other assets of said East Bay Auto Camp, which camp comprises about five (5) acres of land." The petitioner claims that in making the above provision the decedent was attempting to devise a one-third interest in the auto camp and that the area of it was a mere incident. The appellants quote: ". . . which camp comprises about five acres of land", and they argue most earnestly "In this case quantity is as a guide board standing where a road divides, showing to the traveler which fork he must take to reach his place of destination." We think the contention of the petitioner, all of the circumstances considered, is clearly the sound position. It is inconceivable that the decedent constructed this entity, the auto camp, and then for no apparent reason intended by his will to physically cut it into parts. On the other hand, it was plainly his intention that he would like to see the property preserved as an entity and operated as such. Counsel have been unable to locate but two cases in this state which throw any light on the question before us. The appellants cite and rely on *Bruck* v. *Tucker*, 32 Cal. 425. We find nothing in the case that is helpful to the appellants, but on the other hand we think it is quite helpful to the petitioner. Louis Bruck obtained a grant from the Mexican government to lands in Napa Valley. He sold off two tracts, and having done so, he did not have left as much as a half league. On the tract which remained there was a flour-mill. In his will he devised to his daughter

the flour-mill with the land pertaining thereto, a half league more or less. The court first calls attention to the evidence: "No part of that section bore any relation to the mill that was not borne, both in kind and degree, by every other part of it. The only relations which the different portions of the section beyond the walls of the mill bore to each other, lay in the fact that they were parts of a common whole; and the relation so existing between them— *inter sese*—was the relation that existed between them in mass and that particular part of the section on which the mill stood. The principle is this: If the central or any other section of an entire and homogeneous thing be either devised or granted, together with 'all' the other sections 'pertaining' thereto, the entire thing would pass as matter of law. In such case the whole thing would be granted by a virtual enumeration of its parts." Thereupon the court held that the remaining lands of the decedent passed to the devisee. The *Estate of Hopper,* 66 Cal. 80 [4 Pac. 984], involved the matter of an additional purchase. Charles Hopper owned 140 acres in Napa County. He made his will on the first day of April, 1868. On the 14th day of June, 1870, he sold eighteen acres to Baldwin. On February 21, 1871, he sold eighteen acres to Forbes. On July 19, 1872, he repurchased the Baldwin tract. On January 25, 1878, the testator conveyed to his son, Thomas B., the lands not conveyed to Baldwin or Forbes. The testator died September 24, 1880. His will contained a provision, "I give, bequeath and devise to my son, Thomas B. Hopper, that portion of real estate he has enclosed and now has in his possession supposed to be 140 acres more or less". The court held that the will devised the Baldwin tract which was repurchased from Baldwin several years after the will was made. ■ As there is nothing on the face of the will showing to the contrary, the devise to the petitioner of a one-third interest in the auto camp carried an interest in the property subsequently purchased. (Civ. Code, sec. 1312.) We think this is true as to the land, as it certainly would be true as to any of the little houses or shelters that might have been placed on the property after the date of the will.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 29, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 24, 1930.